UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JARRETTA P. HAMILTON,

                **Plaintiff,**

-vs-                                      Case No. 6:10-cv-871-Orl-22DAB

SOUTHLAND CHRISTIAN SCHOOL,
INC.,

                **Defendant.**
_____

## ORDER

This cause comes before the Court for consideration of Defendant Southland Christian School, Inc.'s ("Southland") Motion for Summary Judgment (Doc. No. 25), filed on April 15, 2011. Plaintiff Jarretta P. Hamilton filed a response in opposition (Doc. No. 34) on May 16, 2011. Hamilton asserts three claims against Southland: sex discrimination based on pregnancy pursuant to Title VII (Count I); marital status discrimination pursuant to Florida Statute § 760.10 (Count II); and invasion of privacy based on public disclosure of private facts (Count III). As set forth below, the Court will grant the motion with respect to Hamilton's claims arising under federal law and state discrimination law; her claim for invasion of privacy will be dismissed without prejudice.

### I. UNDISPUTED FACTS[1]

---

[1] Southland's motion for summary judgment consists of a document containing what it states is a "Statement of Undisputed Facts" (Doc. No. 25) and a memorandum of law (Doc. No. 26.) However, Hamilton disputes many of these facts. (*See* Doc. No. 34 p. 19.) Southland thus exceeds the page limit. The Court will cite Southland's statement of the facts where undisputed.

Southland Christian School is a non-denominational Christian School. (Doc. No. 25 ¶ 1.) The school is run by Jon and Julie Ennis. Hamilton began teaching at Southland in January 2008 as a fifth grade teacher. (*Id.* at 16.) She began the 2008-2009 school year teaching fourth grade. (*Id.*) Hamilton does not have a bachelor's degree or a teaching certificate, nor do many of the teachers at Southland. (*See id.* at 17.) Hamilton married Samuel Treftz on February 20, 2009. (*Id.* at 34.) After she realized she was pregnant, she and Treftz met with Mr. Ennis on April 5, 2009, to inform him of her pregnancy and request maternity leave. (*Id.* at 35.) When Ennis asked Hamilton whether she conceived before getting married, she answered in the affirmative. Shortly before the end of the 2008-2009 school year, Hamilton was terminated. (*Id.* at 45.) Hamilton believes that she was terminated "for engaging in premarital sex and because of the difficulty in covering for teachers who left on maternity leave." (*Id.* at 46.) Hamilton was not offered a contract for the 2009-2010 school year. (*Id.* at 47.) "Other Southland employees were permitted to take pregnancy-related leave and not terminated in the period surrounding and during Hamilton's employment." (*Id.* at 48.)

## II. LEGAL STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, modified on other grounds, 30 F.3d 1347 (11th Cir. 1994)). "There is no genuine issue for trial

unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor." *Id.* at 1349.  The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

### III. ANALYSIS

**A.    Title VII Pregnancy Discrimination**

The Pregnancy Discrimination Act "provides that the prohibition against sex-based employment discrimination in § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), applies with equal force to discrimination on the basis of 'pregnancy, childbirth, or related medical conditions.' " *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e(k)).  Title VII does not apply to "a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1(a).  "The First Amendment affords religious organizations and their members the right to practice in accordance with their beliefs, establish schools offering parents the opportunity to educate their children pursuant to their religious tenets by hiring those who hold the same religious views, and act in accordance with their own religious-ethical values." *Ganzy v. Allen Christian Sch.*, 995 F. Supp. 340, 344 (E.D.N.Y. 1998).

"Inquiry by the courts into the religious faith required by a religious organization of its employees is constitutionally barred." *Ganzy*, 995 F. Supp. at 348.  However, "if a woman is dismissed from a teaching position in a religious school because she is pregnant, rather than

3

because she had sexual relations, state and federal prohibitions on gender discrimination are violated." *Id.* at 344. Thus, the relevant inquiry in the instant case is whether Southland terminates men found out to have engaged in premarital sex, as it disciplined Hamilton.

**1.     Ministerial Exception**

Southland asserts that summary judgment should be granted in its favor because Hamilton was a ministerial employee. (Doc. No. 26 p. 7.) According to Southland, the ministerial exception "precludes courts from exercising jurisdiction once a religious organization demonstrates that its employment decision concerns a member of the clergy or an employee in a ministerial position." *Id.*

The purpose of the ministerial exception is to protect the employment decisions of churches regarding ministers. "The ministerial exception emerged as a way to reconcile the tension between the First Amendment and the application of Title VII to a church's decisions regarding employment of its spiritual leaders." *Smith v. Angel Food Ministries, Inc.*, No. 3:08-CV-79, 2008 WL 5115037, at *1 n.1 (M.D. Ga. Dec. 4, 2008) (citing *Gellington v. Christian Methodist Episcopal Church, Inc.*, 203 F.3d 1299, 1303-04 (11th Cir. 2000)). "Because requiring a church to conform to the strictures of Title VII when employing its clergy would be 'an encroachment by the State into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment,' the ministerial exception simply states that Title VII does not apply to the employment relationship between a church and its ministers." *Id.* (citing *McClure v. Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972)).[2] The ministerial exception was established in *McClure*. The *McClure* court explained the reason for

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.

4

the exception in an oft-quoted passage,

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection. It is unavoidably true that these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in the furtherance of the religious mission of the church.

*McClure*, 460 F.2d at 558-59.

Though the ministerial doctrine has been expanded to include religious organizations that are not churches, the "overwhelming majority of courts that have considered" whether a teacher at a sectarian school classifies as a ministerial employee "have held that parochial school teachers . . . who teach primarily secular subjects, do not classify as ministerial employees for purposes of the exception." *E.E.O.C. v. Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 597 F.3d 769, 778 (6th Cir. 2010). "[W]hen courts have found that teachers classify as ministerial employees for purposes of the exception, those teachers have generally taught primarily religious subjects or had a central role in the spiritual or pastoral mission of the church." *Id.* at 779. Eleventh Circuit caselaw has not established the criteria for determining when a school teacher is a minister for purposes of this exception. Rather, as set forth in *McClure*, the exception emphasizes the all-encompassing religious duties of a ministerial-type position. The Eleventh Circuit has held that the relationship between faculty members and a college established by the Southern Baptist Convention is not a minister-church relationship. *See E.E.O.C. v. Miss. Coll.*, 626 F.2d 477, 485 (11th Cir. 1980). The *Mississippi College* court distinguished *McClure* by explaining:

> The College is not a church. The College's faculty and staff do not function as

5

> ministers. The faculty members are not intermediaries between a church and its congregation. They neither attend to the religious needs of the faithful nor instruct students in the whole of religious doctrine. That faculty members are expected to serve as exemplars of practicing Christians does not serve to make the terms and conditions of their employment matters of church administration and thus purely of ecclesiastical concern.

*Id.* Thus, the Eleventh Circuit concluded, "The employment relationship between Mississippi College and its faculty and staff is one intended by Congress to be regulated by Title VII." *Id.* The Court explained that in *McClure* it "expressly restricted its decision to the context of the church-minister relationship." *Id.* (citing *McClure*, 460 F.2d at 555).

Likewise, the ministerial exception does not apply here. The school is not a church and is not affiliated with a church. Hamilton is not considered a minister. Though Hamilton taught Bible lessons, sang praise songs with her students, and led a chapel service on one occasion, even Ennis could not distinguish the way in which subjects are taught to students at Southland from how they are taught in public school. The court concludes that Hamilton taught mostly secular subjects and did not function as a minister in this specific school.

**2.     Title VII and Religious Educational Institutions**

Although the Court determines that the ministerial exception does not apply and thus Title VII governs this employment relationship, religious educational institutions are exempt from Title VII claims when the alleged discrimination is based on religion.

The Court concludes that Southland has established that it is a religious institution and that Hamilton has not shown otherwise.[3] Whether Southland fired Hamilton for religious reasons is not clear at the outset. If Ennis fired her because of the school's religious position that

---

[3] The Court makes this determination based on the school's curriculum and declared purpose despite Ennis's testimony when asked how his school's teaching of various subjects was different from public schools: "I don't know how to answer that question, to be honest with you." (Doc. No. 34 p. 9) (citing Doc. No. 35-1 p. 26).

6

premarital sex is wrong and contrary to its teaching and mission, that decision is exempt from Title VII.  However, Ennis's own testimony demonstrates that his reason might have been that Hamilton was pregnant, rather than that Hamilton had sex before marriage.  Though the First Amendment permits private religious schools to hire those who share its religious views, "limitations on sexual activity cannot be enforced unequally on male and female employees as a means of gender discrimination."  *See Ganzy*, 995 F. Supp. at 344.  Ennis testified that he told Hamilton and Treftz during the meeting that the school "just happened to have had that year, two years in a row, the [sic] staff members that were pregnant."  (R. Ennis Dep. (Doc. No. 25-1) p. 19.)  Ennis also states that he told Hamilton and Treftz, "Man, we're kind of rethinking this situation about what we're going to do, because it's getting difficult getting staff members halfway through the school year."  (*Id.*)  This coincides with Hamilton's implied characterization of her termination: Ennis did not want to be faced with the difficulty of finding substitutes for teachers on maternity leave.

It appears that the Eleventh Circuit has not had the opportunity to examine a factual situation similar to the one in the instant case.  Several other circuits have been confronted with such.  There seem to be two strains of decisions.  In the first group, courts decide that a plaintiff has established a genuine issue of material fact by showing that the school only asks pregnant women who are single or newly-married – and not males – if they engaged in premarital sex.  Courts in the second group find that plaintiffs must produce evidence of non-pregnant or male employees who were known by the administration to have engaged in premarital sex yet were not disciplined according to the policy prohibiting premarital sex.

A case representing the view of the first group is *Cline v. Catholic Diocese of Toledo*,

7

206 F.3d 651 (6th Cir. 2000), where a former teacher sued for pregnancy discrimination after her contract with a Catholic school was not renewed for the stated reason that she had engaged in premarital sex. The Sixth Circuit clarified that "[b]ecause discrimination based on pregnancy is a clear form of discrimination based on sex, religious schools cannot discriminate based on pregnancy." *Cline*, 206 F.3d at 658. The *Cline* court explained that "courts have made clear that if the school's purported 'discrimination' is based on a policy of preventing nonmarital sexual activity which emanates from the religious and moral precepts of the school, and if that policy is applied equally to its male and female employees, then the school has not discriminated based on pregnancy in violation of Title VII." *Id.* The court found that the plaintiff "adduced evidence that the policy was not applied equally among men and women" because the school acknowledged that the teacher's pregnancy alone "had signaled them that she engaged in premarital sex, and that the school does not otherwise inquire as to whether male teachers engage in premarital sex." *Id.* at 667. Thus, the teacher established an issue of material fact as to whether the school enforces its policy against premarital sex solely by observing the pregnancy of its female teachers. *Id.*

Relying in part on *Cline*, a district court denied a religious school's motion for summary judgment because the school could not explain how it enforced a policy against extramarital sexual relations evenly to both males and females, if such policy existed. *See Redhead v. Conference of Seventh-day Adventists*, 566 F. Supp. 2d 125, 137 (E.D.N.Y 2008) (citing *Redhead v. Conference of Seventh-day Adventists*, 440 F. Supp. 2d 211, 223 (E.D.N.Y. 2006)). The court determined that "Plaintiff has provided enough evidence to create a genuine issue of material fact as to whether defendant's policy against fornication was applied against her in a

8

discriminatory manner." *Id.*

A court denied summary judgment to a sectarian high school that argued that a bona fide occupational qualification was for its teachers to follow a code of religious moral conduct. *Dolter v. Wahlert High Sch.*, 483 F. Supp. 266, 271 (D.C. Iowa 1980). The court did not deny the merits of such contention but determined that there was in issue of fact as to whether the school applied the code of conduct discriminatorily on the basis of sex. *Id.* The *Dolter* court leaves open the question of whether plaintiff would be able to submit evidence showing that males were known to have engaged in premarital sex but were not fired.

Other courts seem to simply assume that the plaintiff has established that she was treated less favorably than non-pregnant employees. For example, in *Ganzy*, the court stated that the teacher "was arguably treated less favorably than at least some other nonpregnant employees." 995 F. Supp. at 359. The court concluded that the "record thus far does not indicate whether anyone else – male or female – has ever been fired as a teacher by the Defendant for sexual intercourse outside of marriage" and denied the school's summary judgment motion. *Id.* at 360.

A Sixth Circuit decision provides a representation of the second line of cases. In that case, the court upheld the district court's findings after a bench trial that the teacher failed to demonstrate that the school's policy against extramarital sex was applied in a discriminatory manner in part because the teacher did not show that the supervisor "was actually aware that any employees were engaging in sex outside of marriage during the time they were employees." *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 414 (6th Cir. 1996). The school in *Boyd* presented evidence at trial that in the past it had terminated a teacher "for living with a woman who was not his wife," a male academic dean for sexual immorality, and female teachers on two

occasions for "engaging in sex outside of marriage" that did not result in pregnancy. *Id.* at 412. The court concluded that there "were no situations described at trial in which [the school's president and CEO] was aware of an employee's sexual activity outside of marriage and failed to take action." *Id.*

A Third Circuit case evaluating a different factual situation – a Catholic school teacher who alleged pregnancy discrimination after she was terminated for advocating the right to abortion – stated that in order to avoid constitutional issues, plaintiffs must aver "that truly comparable employees were treated differently following substantially similar conduct." *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 141 (3d Cir. 2006). The court reiterated its position from earlier cases "that many claims of discrimination against a religious employer under Title VII will not raise serious constitutional questions" as long as "plaintiff did not challenge the validity or plausibility of the religious doctrine said to support her dismissal." *Id.* "Requiring a religious employer to explain why it has treated two employees who have committed essentially the same offense differently poses no threat to the employer's ability to create and maintain communities of the faithful." *Id.* The court granted the Academy's motion to dismiss because it concluded that the plaintiff did not offer sufficient comparators – one was a Jewish male and the other a male who opposed the Iraq war. The court concluded that "if we were to consider whether being Jewish or opposing the war in Iraq is as serious a challenge to Church doctrine as is promoting a woman's right to abortion, we would infringe upon the First Amendment Religion clauses." *Id.* at 140.

**3.     Hamilton Has Not Demonstrated a Genuine Issue of Fact Regarding Southland's Reason for Her Termination**

The Court agrees with the second group of cases as those courts adopt the proper

constitutional analysis. In pregnancy discrimination suits, courts use the same Title VII analysis as in other sex discrimination suits. *Armindo*, 209 F.3d at 1320. A plaintiff may present either direct or circumstantial evidence of such discrimination. If a plaintiff relies on circumstantial evidence, as here, courts evaluating sex discrimination suits normally employ the *McDonnell Douglas* burden-shifting framework. *See Bennett v. Chatham Cnty. Sheriff Dep't*, 315 Fed. App'x 152, 159 (11th Cir. 2008). After a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to establish a legitimate nondiscriminatory reason for the adverse employment action. *Id.* The plaintiff must then "present evidence that the employer's reason is pretext for discrimination." *Id.* To show pretext, the plaintiff must show that the employer's reason is both false 'and that discrimination was the real reason' for the decision." *Id.* (citing *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F. 3d 1160, 1163 (11th Cir. 2006)).

In order to establish a prima facie case of pregnancy discrimination, a plaintiff must present evidence that "(1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse effect on her employment; and (4) the plaintiff suffered from differential application of work or disciplinary rules." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994). The burden of establishing a prima facie case is "not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Southland concedes that because Hamilton was pregnant and was terminated, the first and third prongs are satisfied. (*See* Doc. No. 26 p. 15.) The Court determines that Hamilton has also satisfied the second prong. Hamilton has shown that she was qualified for her position.

11

Southland's assertion that she was not qualified to teach because "her role as a Christian role model was tarnished" is not the correct analysis. (*See id.* at 16). This determination is to be made later regarding why Southland actually fired her. Southland thus "improperly imported the later stages of the *McDonnell Douglas* analysis into the prima facie stage." *See Cline*, 206 F.3d at 660-61 (stating that "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff").

Hamilton has not established a prima facie case because she has not shown the fourth prong: the differential application of disciplinary rules. Because Hamilton has not shown another employee who "committed the same offense" but was treated differently, *Curay-Cramer*, 450 F.3d at 141, the Court finds that Hamilton has not submitted sufficient evidence for a jury to return a verdict in her favor. Hamilton has not demonstrated a genuine issue of material fact regarding whether Southland fired her for a religious reason. "The plaintiff in an employment discrimination case bears the burden of establishing that the employer falls within the scope of the pertinent statute." *Killinger v. Samford Univ.*, 113 F.3d 196, 198 (11th Cir. 1997). Hamilton has not shown that she was treated differently than another employee known by Southland to have engaged in premarital sex while employed at Southland.

Hamilton asserts that the discrimination stems from Southland asking her if she engaged in premarital sex but not asking male employees if they engaged in premarital sex. The Court determines that the actual source of any discrimination would be if Southland implemented the policy unevenly by treating males known to have violated the policy differently than females

12

known to have violated it. The Court acknowledges that when compared with women who have the capacity to become pregnant, men can much more easily hide their sexual activity. However, the Court cannot imagine that a good solution to this persistent imbalance would be to imply that religious employers should inquire regularly into male and female employees' sexual activity. Hamilton must instead show that another employee known by the administration to have violated the prohibition of premarital sex was not terminated. For example, if the father of her child had also been a teacher at the school at the time of the conception but was not fired, this would be evidence of unequal application of school rules and also demonstrate that Hamilton was fired for being pregnant instead of for a religious reason. The Court is aware that producing a comparator is sometimes difficult and often impossible. However, the Court cannot presume pregnancy discrimination just as it cannot presume any type of discrimination without sufficient evidence of such. Because Hamilton has not offered any evidence that another non-pregnant employee known to have been violating the premarital sex policy was treated differently than she was, Hamilton has not carried her burden to establish a prima facie case and cannot refute Southland's assertion that it fired Hamilton for a religious reason. Southland's motion for summary judgment will be granted as to this claim.

**B.      Marriage Discrimination (Count II)**

Under Florida law, an employer may not discriminate against an employee based on his or her marital status. Section 760.10, Florida Statutes, provides that

(1) It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

Fla. Stat. § 760.10(1)(a) (2011). The Florida Supreme Court has established that "marital status" is the " 'state of being married, single, divorced, widowed or separated . . . .' " *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1326 (11th Cir. 2006) (quoting *Donato v. Am. Tel. & Tel. Co.*, 767 So. 2d 1146, 1155 (Fla. 2000)).

This claim negates Hamilton's assertions in support of her pregnancy discrimination claim. She contends that Southland terminated her because of her marital status at the time she conceived – she was single. However, if this is the reason that Southland terminated her, it supports Southland's proffered reason – that it dismissed Hamilton because of its religious belief that having sex while single is wrong and contrary to the school's religious standards. Because this would be a religious reason exempt from Title VII and also exempt from the state statute, summary judgment will be granted in Southland's favor on this claim. *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.").

**C.     Invasion of Privacy (Count III)**

Having disposed of the discrimination claims arising under federal and state law, the Court declines to exercise supplemental jurisdiction over Hamilton's state law claim of invasion of privacy. The supplemental jurisdiction statute provides:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

. . . .

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367. Because Southland is entitled to summary judgment on the only claim over which the Court has federal jurisdiction and on the related state discrimination claim, the Court may exercise its discretion pursuant to § 1367(c)(3) to decline to exercise supplemental jurisdiction over Hamilton's remaining state law claim. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994). Therefore, Hamilton's invasion of privacy claim will be dismissed without prejudice.

## IV. CONCLUSION

Based on the foregoing analysis, it is ORDERED as follows:

1. Defendant Southland Christian School, Inc.'s Motion for Summary Judgment (Doc. No. 25), filed on April 15, 2011, is GRANTED with respect to Plaintiff Jarretta P. Hamilton's discrimination claims – Count I for pregnancy discrimination pursuant to Title VII and Count II for marriage discrimination pursuant to Florida Statute § 760.10.

2. The Court declines to exercise supplemental jurisdiction over the invasion of privacy claim in Count III. Title 28, United States Code, Section 1367(d) provides that the statute of

limitations is tolled while state law claims are pending in federal court until thirty days after an order of dismissal. Therefore, Hamilton may pursue this claim in state court if she files in a timely manner. The invasion of privacy claim is hereby DISMISSED WITHOUT PREJUDICE.

3. The Clerk shall enter a final judgment providing that the Plaintiff, Jarretta P. Hamilton, shall take nothing on her discrimination claims against the Defendant, Southland Christian School, Inc. The judgment shall further provide that the Defendant shall recover its costs of action for those two claims.

4. The Clerk is directed to CLOSE this case.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida, on July 11, 2011.

*Anne C. Conway*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record